Gerald PERDUE and Coleen A. Perdue,
Husband and Wife, Plaintiffs
and Appellees,

v.

James SHERMAN, Defendant
and Appellant,

and

The unknown heirs, devisees, and legatees
of James Sherman and all other persons
unknown claiming any right, title, and
interest in the said property, Defendants.

Civ. No. 9221.

Supreme Court of North Dakota.

Oct. 15, 1976.

**492**

Marvin L. Kaiser, of Rolfstad, Winkjer, Suess, McKennett & Kaiser, Williston, for plaintiffs and appellees.

Fred E. Whisenand, of McIntee & Whisenand, Williston, for defendant and appellant.

VOGEL, Justice.

This is an appeal from a denial by the district court of a motion to reopen a default judgment in an action to quiet title. We reverse and remand.

The real estate involved in the action formerly belonged to members of the family of the defendant, James Sherman. The owner had agreed to resell it to members of the Sherman family for the amount of money he had invested in it. Sherman was interested in repurchasing it, but apparently had difficulty raising the money. He went to the plaintiff Gerald Perdue and arranged that Perdue would finance the repurchase. Sherman and Perdue entered into a hastily drawn contract which provided that Perdue, who then purchased the land, would sell to Sherman for the same price he had paid the former owner, and that "the time for payment shall be on a Contract for Deed on like terms as the terms that the Seller [Perdue] received from the Federal Land Bank." No time limit for the resale was specified. The contract also provided that Sherman would execute a farm lease with Perdue for a term of at least five years. After the execution of the contract, Perdue, who had previously rented the property for many years, continued to farm it without payment of any rentals or accounting for any proceeds. The contract was dated March 11, 1974.

In August, Perdue's attorney wrote to Sherman advising him that the purchase from the former owner was complete. In October, another letter was written by Perdue's attorney requesting that Sherman exercise his right of repurchase within 30 days. Neither letter produced a reply, but the second one, sent by certified mail, was receipted for by Sherman. In November 1974, the attorney sent a quitclaim deed to Sherman, asking him to execute and return it. Sherman did not reply.

On July 12, 1975, Perdue and Sherman met and discussed the land transaction.

Their affidavits differ as to what was said at the meeting.

On October 31, 1975, a summons and complaint in the action by Perdue to quiet title to the property in himself were issued. Service on Sherman was made by publication and mailing. The first publication was made on November 10, 1975. Under Rule 4(e)(7), N.D.R.Civ.P., Sherman's time to answer would expire on December 15. A copy of the summons and complaint was mailed to him on November 19, addressed to Roosevelt, Utah. Sherman claims that he had informed Perdue that his address was Rawlins, Wyoming. At any rate, Sherman received the summons and complaint by certified mail on December 4. He assumed he had 20 days from December 4 in which to answer.

Thereafter, he made some attempts to obtain further information and retained an attorney. Between December 4 and 7, he says he contacted his brother in North Dakota for information and attempted to contact Perdue's attorney. On December 7, he reached Perdue by telephone. Again, the contents of the conversation are in dispute. On December 8, he attempted to contact Perdue's attorney but failed. On December 16, he tried again and was referred to a partner of the attorney, who told him that they could not represent Sherman and that he himself was not familiar with the facts of the case. On December 18, Sherman reached the attorney for Perdue, who says he told Sherman that the hearing on the action to quiet title was set for December 23 and that the time for answering had expired on December 15. Sherman called the Chamber of Commerce for a list of attorneys, called one attorney whom he knew and learned that the attorney had moved to Minneapolis, and tried to reach a partner of that attorney, who was out of the office. On December 21, he called his brother requesting information, and on December 22 he called the attorney for Perdue. Again, there is a conflict as to the contents of the conversation. The attorney says that Sherman told him he would execute the quitclaim deed, and Sherman denies this.

On December 23, evidence in support of a default judgment was presented to the district judge, who was not advised of any of the conversations between Sherman and Perdue or his attorney.

Between December 23 and 29, Sherman says he talked to his brother and asked him to find an attorney for him.

Incidentally, all attorneys' offices in Williston, North Dakota, near the land in question, were closed from the early afternoon of December 24 until the morning of December 29. On December 29, Sherman's present attorney was contacted and he got in touch with the attorney for Perdue. Sherman's attorney wrote a letter confirming the conversation. The contents of the letter and the conversation are mentioned below.

The following day, December 30, judgment was entered on default by the district judge, who had not been advised of the attorneys' conversation of the previous day or the conversations between Sherman and Perdue's attorney.

On January 6, 1976, Sherman's attorney filed and served a motion to reopen the default judgment, with a proposed answer and counterclaim. A hearing was had on the motion on January 14, and the court denied it on February 20, 1976.

### DECISION

◼ We hold that the conversation of December 22, 1975, between Sherman and the attorney for Perdue constituted an appearance, and that once an appearance had been entered by Sherman, he was entitled to the eight days' notice of intention to enter judgment specified by Rule 55(a). A judgment entered without compliance with Rule 55(a) is not void, but is irregular. *United Accounts, Inc. v. Lantz*, 145 N.W.2d 488 (N.D.1966).

We arrive at this determination in the following steps:

◼ First, we are committed to the rule stated in the first paragraph of the Syllabus

to *United Accounts, Inc. v. Lantz, supra,* at 489:

> "1. Where defendant failed to answer within the time prescribed by the Rules of Civil Procedure, but served an answer on the plaintiff before plaintiff made application for a default judgment, the defendant 'has appeared in the action' within the meaning of Rule 55, N.D.R.Civ.P., and plaintiff is required by said rule to serve a written notice at least eight days prior to a hearing on his application for a default judgment."

See also *William Clairmont, Inc. v. Burlington Northern, Inc.,* 229 N.W.2d 77 (N.D. 1975); and *Evanson v. Wigen,* 221 N.W.2d 648 (N.D.1974).

Second, since Rule 55, relating to default judgments, speaks interchangeably of pleadings and appearances, we will apply the same rule to other varieties of appearance as we do to pleadings.

 Third, we interpret the telephone conversation of December 29, 1975, between the attorneys for Perdue and Sherman as establishing an appearance by Sherman. It is so described in the letter from the attorney for Sherman to the attorney for Perdue dated December 30 but dictated December 29, the date of the conversation. That letter concludes:

> "It is also my understanding of our discussion that you would note our appearance on behalf of the defendant in this case."

The affidavit of the same attorney states that during the telephone conversation he "orally made an appearance on behalf of the defendant, James Sherman, in the above entitled action;" and that he indicated to the attorney for Perdue that he "was making an appearance on behalf of said defendant [Sherman] in the above entitled action."

These statements are nowhere refuted. The affidavit of the attorney for Perdue says only this:

> "The Affiant acknowledges that he had a conversation with attorney Fred E. Whisenand of Williston, North Dakota, on December 29, 1975, and he indicated

that he had talked with the Sherman family and was going to meet with them to decide whether they wanted to pursue a Motion to reopen. The Affiant indicated that he would continue to bring the case to conclusion."

Courts are divided on whether telephone calls can constitute appearances. It has been held that acquiescence by a senior partner to a telephoned request for additional time to answer, followed two months later by entry of default judgment by a junior partner without notice to the adverse party, justified reopening [*Hutton v. Fisher,* 359 F.2d 913 (3d Cir. 1966)]; and that negotiations by telephone for settlement, which indicated that the action would be defended, constituted a sufficient appearance to require notice of intent to enter default judgment [*H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 139 U.S. App.D.C. 256, 432 F.2d 689 (1970)]. On the other hand, in *Booth v. Magee Carpet Co.,* 548 P.2d 1252 (Wyo.1976), it was held that a telephone communication was not an "appearance" where an attorney for a defendant who was 23 days late in answering asked the plaintiff's attorney if default judgment had been entered, was told it had not been, asked for time to answer, and was told that the plaintiff's instructions would be asked for. The attorney for the plaintiff was instructed by the plaintiff to enter default judgment immediately and did so, without regard to the request of the defendant's attorney for more time.

██ We believe we would have decided the *Booth* case differently. We believe the plaintiff's attorney, under the circumstances, had a duty to advise the court, immediately upon learning of the defendant's attorney's intent to defend, that the defendant was no longer in default. As we pointed out above, we adhere to the rule that an appearance, once made, entitles the party appearing to eight days' notice of the intention to enter default judgment, and we would have held in *Booth,* and we hold here, that the party entering a default judgment, without giving such notice, after a tele-

phoned communication by an attorney expressing an intention to *r̃* swer, obtains only a voidable judgment. We prefer the rule of the two Federal courts cited above, which is stated in *Livermore, supra,* in these words:

"Therefore, the critical question is whether the exchanges between the parties described above constituted an 'appearance' by appellant within the meaning of this language. The policy underlying the modernization of federal procedure, namely, the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits, is central to this issue. [Citations omitted.] This court has been mindful of this policy in its construction of the Rules in order to afford litigants a fair opportunity to have their disputes settled by reference to the merits. [Citations omitted.]

"Given this approach, the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection. Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy. The notice requirement contained in Rule 55(b)(2) is, however, a device intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit." 432 F.2d 689, at 691.

Fourth, we therefore conclude that there was an appearance by Sherman one day prior to the entry of judgment. Since there was an appearance prior to the entry of judgment, the affidavit of no answer, the findings of fact, conclusions of law, and order for judgment, and the judgment—all of which contain allegations of no answer or appearance—were not correct on the date the judgment was entered, although they were correct at the time of the hearing on December 23. See *United Accounts, Inc. v. Lantz, supra.*

■ While Rule 55(a) says that a person appearing in the action is entitled to "written notice of the application for judgment at least eight days prior to the hearing on such application," and the hearing was held on the 23d, prior to the appearance on the 29th, our prior holdings that an answer filed prior to the entry of judgment entitles one to notice requires a holding here that an appearance prior to the entry of judgment entitles one to the same notice. The findings of the court at the hearing are ineffectual until entered. In this case they were entered on December 30, while the appearance was made on December 29. See *Reeder v. Marshall,* 214 Or. 154, 328 P.2d 773 (1958), where a similar result was reached even though the trial court had signed an order finding the defendant in default. The Oregon court quotes 3 Bancroft's Code Pleading, Practice and Remedies, Ten Year Suppl., Pt. VII, Ch. V, § 1804:

" ' . . . Where a plaintiff, after the time expressly granted for filing a pleading has expired, suffers further time to elapse without taking any action thereon, he in effect grants further time to plead, with the result that a general appearance made before default *entered* is in time.' " [Emphasis added.]

■ The defendant Sherman having appeared one day before entry of judgment, he was entitled to eight days' notice under Rule 55(a). Since notice was not given of application for judgment, the judgment is voidable. Upon remand, he is entitled to notice.

■ Since the judgment is irregular and voidable, and since Sherman has now filed (as an attachment to his motion to reopen the judgment) an answer which we have examined and find to contain on its face a presumably meritorious defense, we trust that the district court, upon remand, will allow the reopening of the judgment and a trial upon the merits. It is the established

policy of the courts of this State to grant motions to reopen judgments, when promptly made, when the grounds stated satisfy the requirements of Rule 60 for re-opening, and when an answer appearing to state a meritorious defense is presented. *King v. Montz,* 219 N.W.2d 836 (N.D.1974); *Kinsella v. Kinsella,* 181 N.W.2d 764 (N.D. 1970). See also Sec. 32–17–13, N.D.C.C. Reasonable terms may, of course, be imposed. *King v. Montz, supra.*

In *King v. Montz,* a motion to reopen and an answer filed within seven days after entry of judgment were held to be promptly filed under the circumstances. In the case before us, the motion and proposed answer were filed within four business days.

 We have often expressed a strong preference for having cases tried upon their merits. *Sioux Falls Construction Co. v. Dakota Flooring,* 109 N.W.2d 244 (N.D.1961); *Azar v. Olson,* 61 N.W.2d 188 (N.D.1953). It is also the policy of our courts to treat applications to reopen default judgments somewhat more leniently than applications to reopen judgments entered after contested trials. *City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324 (N.D.1975).

It is also true, of course, that we generally sustain the trial courts in acting within their discretionary powers as to reopening judgments under Rule 60. If there were no question of law involved here, we would find this case considerably more difficult. However, we reverse primarily upon a question of law, under Rule 55(a), rather than under Rule 60.

Reversed and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.