**Joan M. WILSON, Plaintiff and Appellee,**

v.

**John M. WILSON, Defendant and Appellant.**

Civ. No. 10754.

Supreme Court of North Dakota.

March 13, 1985.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for defendant and appellant; argued by Maureen Holman, Fargo.

William Yuill [argued], of Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for plaintiff and appellee.

GIERKE, Justice.

Defendant, John M. Wilson, appeals from an order issued by the District Court of Cass County which denied his motion to vacate a default divorce judgment. We reverse and remand.

The record reveals that John and Joan were married on November 11, 1976. The marriage was a second marriage for both of the parties. Each of the parties has grown children from their prior marriages, but no children were born of their marriage. John is a dentist. Joan, now age 53, has a college education, and is a licensed realtor.

On June 8, 1983, Joan commenced a divorce action against John by serving upon him a summons and complaint, along with an order to show cause, affidavit in support of order to show cause, and order of reference. A hearing was held on the order to show cause on June 20, 1983. Joan appeared in person with her counsel. John did not appear in person or through counsel. A referee entered findings of fact and conclusions of law which granted temporary spousal support to Joan. At the time of the hearing the parties were living together in their condominium. John was ordered to pay the condominium payment and related utility bills. The court ordered that, if Joan chose to set up a separate apartment, Joan would receive $765 a month from John. John was also responsible for providing Joan with dental services, maintaining her existing health insurance, and paying $1,000 toward Joan's attorney fees. John made no payments of temporary support, nor did he pay anything toward Joan's attorney fees.

Joan petitioned the court for a default judgment, and a hearing was held on October 31, 1983. John was not given notice of this hearing. He was not present in court. The district court determined that John was in default because he failed to file an answer or otherwise make an appearance in the matter. Thus, a default judgment was entered against John on November 16, 1983, and notice of entry of the judgment was served on John by mail the next day. The divorce judgment provided for, inter alia, the payment of lifetime spousal support of $900.00 per month to Joan.

John made a motion for relief from the default judgment, which motion was denied. John asserts that he did not know Joan was actively proceeding with the divorce. John states that he honestly believed the parties were settling their differences.

■ On review, this court is more inclined to reverse an order denying defendant's motion to vacate a default judgment than an order vacating a judgment and allowing a trial. *See Galloway v. Galloway*, 281 N.W.2d 804, 806–807 (N.D.1979).

■ The standard used for reviewing a district court's denial of a motion to vacate a default judgment, based on Rule 55 of the North Dakota Rules of Civil Procedure, is a review of a question of law. *Perdue v. Sherman*, 246 N.W.2d 491, 496 (N.D.1976). Questions of law are fully reviewable on appeal. *Feiler v. Wanner*, 340 N.W.2d 168, 169 (N.D.1983); *Gulden v. Sloan*, 311 N.W.2d 568, 572 (N.D.1981). The dispositive question in this appeal is whether or not John made an "appearance" which would have entitled him to notice of the default hearing.

The district court, in its findings of fact, concluded that: "no answer or appearance

has been made by the Defendant". John contends that the conduct demonstrated by the parties constitutes an appearance within the meaning of Rule 55, N.D.R.Civ.P., which entitled him to notice of the default hearing held on October 31, 1983. Rule 55 provides, in pertinent part:

### "DEFAULT

*"(a) Entry.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise appear and the fact is made to appear by affidavit or otherwise, the court may direct the clerk to enter an appropriate judgment by default in favor of the plaintiff and against the defendant as follows:

. . . .

"(3) No judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 8 days prior to the hearing on such application."

■ Thus, a defendant is entitled to notice of an application for judgment if he has made an "appearance" in the action. Regardless of whether or not this defendant has made an appearance, it is common practice to serve the defendant with notice of a pending hearing.

■ The leading federal case which interprets the meaning of a Rule 55 appearance is *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder L.,* 432 F.2d 689 (D.C. Cir.1970). Federal Rule 55 is analogous to North Dakota Rule 55 in principle, although the Federal Rule provides for 3 days' notice rather than 8. The decisions subsequent to *H.F. Livermore, supra,* demonstrate that an appearance for purposes of Rule 55 is given a liberal interpretation. *Muniz v. Vidal,* 739 F.2d 699, 701

(1st Cir.1984); *Lutomski v. Panther Valley Coin Exchange,* 653 F.2d 270, 271 (6th Cir.1981). *See* 6 Moore's Federal Practice ¶ 55.05(3) (2d ed. 1983); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §§ 2681, 2686 (1983); Annot., 27 A.L. R.Fed. 620, 627–629 (1976); Annot., 73 A.L. R.3d 1250, 1267–1268 (1976). The policy behind Rule 55 is to afford litigants a fair opportunity to adjudicate their disputes on the merits, rather than by default. *H.F. Livermore, supra* 432 F.2d at 691. Our court has endorsed this policy as well. *Bender v. Liebelt,* 303 N.W.2d 316, 319 (N.D.1981); *Perdue v. Sherman,* 246 N.W.2d 491, 496 (N.D.1976).

John contends, because he and Joan continued to live together throughout the course of the divorce proceeding and because the parties discussed the pending proceeding, that these two factors are sufficient to constitute an appearance as contemplated under Rule 55. John relies on our court's decisions in *Svard v. Barfield,* 291 N.W.2d 434 (N.D.1980) [parties' meeting at restaurant two weeks after suit had been filed to negotiate the dispute constituted an appearance]; and in *Perdue v. Sherman, supra* 246 N.W.2d at 493 [telephone conversation between defendant and plaintiff's attorney constituted an appearance] as supportive of his position. Neither *Svard, supra,* nor *Perdue, supra,* is dispositive of the instant case, however.

The evidence available to this court on review consists of the affidavits prepared in support of and in opposition to John's motion for relief and the transcript of counsel's arguments at the hearing on John's motion. No oral testimony was presented.

The affidavits present two widely disparate views of the case. As John states in his affidavit, which reads, in pertinent part:

"4. That he failed to answer the Complaint because he did not believe his wife was actively pursuing the divorce since she continued to live with him and made no effort to enforce the provisions of the Interim Order dated June 21, 1983. That he believed the multiple papers served on him only sought a separation.

"5. That he failed to appear at the Show Cause hearing because he recognized that the obligations he would have under an Interim Order would be no greater than the obligations he was carrying at that time.

"6. That he hoped his failure to object to the Interim Order would be seen as an effort at reconciliation with his wife.

"7. That his wife never demanded the alimony ordered under the Interim Order.

"8. That the parties continued to live together as husband and wife throughout the summer, fall and early winter of 1983.

"9. That he continued to have conversations with his wife regarding reconciliation and that it was his belief that differences between them were being reconciled."

John's perception of the parties' status was obviously divergent from Joan's, as reflected in her affidavit, which reads, in pertinent part:

"4. Defendant was well aware of affiant's intention to secure a divorce; the topic was discussed between them on many occasions; he was told several times that affiant was moving to Arizona in about October as soon as the divorce was final; he was angry because he felt that one lawyer should be used rather than each party having counsel; he told people in the presence of affiant that they were being divorced; he spoke of it quite openly.

"5. Defendant's failure to appear at the Show Cause hearing is simply evidence of the cavalier attitude of the Defendant toward the Courts generally and this action specifically.

"6. No attempt was ever made by Defendant to reconcile the differences which became manifest in this marriage; the joint occupancy of the marital home was more an armed truce; Defendant continuously demanded of the Plaintiff that she 'get this divorce over.'

"8. The parties occupied different areas of the home; seldom dined together or had any time for one another.

"9. Contrary to his assertions, the months prior to the divorce were spent either in silence or in chaos, there was no semblance of a normal relationship; on at least one occasion in early December Defendant became physically abusive toward Plaintiff."

What is clear from the affidavits is that the parties did continue to share their condominium throughout the course of the divorce proceeding, which lasted approximately four months. After the divorce, Joan continued to live in the condominium until she moved to Arizona a month later.

The very nature of the parties' living arrangement lends itself to interaction between the parties. Also implicit in this arrangement is the possibility that one or both of the parties will misunderstand the other's intention.

 We conclude that under the circumstances in the instant case John made an appearance as contemplated under Rule 55, N.D.R.Civ.P. Therefore, pursuant to Rule 55, John should have been notified of the hearing held on October 31, 1983. A judgment entered in violation of Rule 55 is not void, but is irregular. *Perdue, supra* 246 N.W.2d at 493.

Accordingly, we reverse the denial of John's motion to vacate the default judgment and remand for further proceedings which will allow John to present a defense to the action.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.