2001 ND 130

US BANK NATIONAL ASSOCIATION, as personal representative of the Estate of Roy E. Hackman, deceased, Plaintiff and Appellee,

v.

Karen ARNOLD, as personal representative of the Estate of Dennis Arnold, deceased, Defendant and Appellant.

No. 20010071.

Supreme Court of North Dakota.

July 13, 2001.

Michael Geiermann, Rolfson Schulz Lervick & Geiermann Law Offices, P.C., Bismarck, for plaintiff and appellee.

Todd A. Sattler (argued) and David S. Maring (on brief), Bismarck, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Dennis Arnold[1] appealed from an order denying his motion to vacate default judgment. Concluding the district court's findings of fact were not clearly erroneous and the district court did not abuse its discretion in denying the motion to vacate default judgment, we affirm.

---

1. At oral argument, the Court was advised that Arnold died the week prior to argument. Under N.D.R.App.P. 43, Karen Arnold was later substituted as personal representative of Arnold's estate.

I

[¶ 2] Arnold, who owned and operated Denny's Lumber in Steele, North Dakota, was a longtime acquaintance of Roy Hackman, then an 84–year–old resident of a Steele nursing home. In March 1999, Hackman issued a $50,000 check to Arnold, apparently as payment for Arnold to begin construction of a four-unit apartment building in Steele. After receiving the check, Arnold ordered materials, made arrangements with contractors, and prepared blueprints for the apartment.

[¶ 3] After discovering the $50,000 payment to Arnold, a social worker at Hackman's nursing home filed an ex parte petition for appointment of a guardian and conservator for Hackman. On July 1, 1999, the district court appointed an employee of U.S. Bank ("the Bank") as temporary guardian and conservator for Hackman.

[¶ 4] On July 3, 1999, the Bank sent Arnold a letter advising him of the guardianship and instructing him to halt construction of the apartment until a meeting could be held. Arnold met with representatives of the Bank on July 13, 1999. Apparently, as a result of the meeting, further construction was not authorized. On November 20, 1999, Hackman died, and according to his will, the Bank was appointed personal representative of his estate.

[¶ 5] On August 11, 2000, the Bank sent Arnold a certified letter instructing him to repay $50,000 to Hackman's estate or litigation would follow. Arnold received the letter but did not respond. The Bank sent a second certified letter, requesting that Arnold remove lumber from lots owned by the Bank. Arnold received the letter but again did not respond.

[¶ 6] The Bank initiated litigation, serving Arnold with a summons and complaint on September 12, 2000. Arnold did not file an answer or otherwise respond. The Bank applied for default judgment and notified Arnold of the application.[2] On October 13, 2000, attorney Jerry Renner telephoned attorney Michael Geiermann, counsel for the Bank. Renner, after stating Arnold was in his office, inquired whether Geiermann had received an order for default judgment. Geiermann responded that the order was on the judge's desk. The parties otherwise dispute the purpose, content, and general nature of the telephone conversation.

[¶ 7] Judgment by default was entered on October 18, 2000, and notice of entry of the default judgment was served on Arnold and Renner on October 19, 2000. Arnold moved to vacate the default judgment on October 30, 2000. In his affidavit in support of the motion to vacate default judgment, Arnold recited the details of his agreement with Hackman. Arnold also averred that in 1998 he was diagnosed as clinically depressed and in August 2000, under the direction of a physician, he was taking anti-depressant medication. Arnold attributed his depression to a series of traumatic events: in 1997 his wife was diagnosed with cancer, and his son committed suicide; in 1998 Arnold suffered a heart attack; and, in July 2000 his brother was diagnosed with terminal cancer.

[¶ 8] Arnold also alleged that in his capacity as sole owner of Denny's Lumber, he was overwhelmed with work between August and October of 2000—the period of the litigation. In his affidavit, Arnold admitted he did not respond to the summons and complaint "even though [he] disagreed with the allegations in the Complaint."

---

**2.** The Bank notified Arnold of the application even though notice is not required under Rule

55, N.D.R.Civ.P. *First Nat'l Bank v. Hoggarth,* 331 N.W.2d 271, 273 (N.D.1983).

Arnold alleged he "was not completely aware that [he] had been sued or that there could be any consequences if [he] did not respond to the Complaint." Arnold also alleged that after meeting with Renner and after contacting counsel for the Bank, he thought he "had three weeks to attempt to settle the matter."

[¶ 9] On November 16, 2000, Arnold's motion to vacate the default judgment was heard. On December 18, 2000, the district court denied the motion. Arnold's appeal was timely. On appeal, Arnold alleges Renner's telephone call to counsel for the Bank constituted an appearance, entitling him to eight days' notice of the application for default judgment. Alternatively, Arnold argues the district court erred in concluding that excusable neglect had not been proven.

[¶ 10] The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 11] Arnold argues that attorney Renner's telephone call to counsel for the Bank constituted an appearance, entitling him to notice before entry of default judgment. Arnold further argues that because he did not receive notice, the default judgment must be vacated. Rule 55(a)(3), N.D.R.Civ.P., provides, "If the party against whom judgment by default is sought has appeared in the action, the party . . . must be served with written notice of the application for judgment at least 8 days before the hearing on the application."

### A

■■■ [¶ 12] "Whether particular conduct is an 'appearance' for purposes of NDRCivP 55 is a question of law." *Hatch v. Hatch,* 484 N.W.2d 283, 286 (N.D.1992).

A party must factually demonstrate an appearance in order to obtain relief from judgment. *Id.* In N.D.R.Civ.P. 55 cases in which the underlying facts used to support the conclusion of an appearance are undisputed, we address only the legal question of whether, as a matter of law, a party has appeared. *See, e.g., Perdue v. Sherman,* 246 N.W.2d 491, 494 (N.D.1976) (a telephone call constitutes an appearance when the attorney says he is appearing on behalf of a defendant and the plaintiff does not refute that statement). In cases similar to this one, this Court has reviewed the district court's factual findings to determine whether particular conduct constitutes an appearance. *See Wilson v. Wilson,* 364 N.W.2d 113, 114–15 (N.D.1985) (discussing the district court's findings of fact in relation to an appearance). If the district court's interpretation of disputed facts is not clearly erroneous, we fully review whether the facts support the ultimate legal conclusion of an appearance. *Cf. Wheeling v. Director, North Dakota Dep't of Transp.,* 1997 ND 193, ¶ 5, 569 N.W.2d 273 (whether facts constitute probable cause is a fully reviewable question of law).

■■■ [¶ 13] A finding of fact will be set aside on appeal only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Albrecht v. Metro Area Ambulance,* 2001 ND 61, ¶ 6, 623 N.W.2d 367.

### B

■■■ [¶ 14] Demonstrating a preference for adjudication of proceedings on the merits, this Court broadly interprets the term "appearance." *Federal Land Bank of St. Paul v. Lillehaugen,* 370 N.W.2d 517, 519 (N.D.1985); *Hatch,* 484 N.W.2d at 285. A formal written document is not

required for an appearance, and this Court has recognized a telephone conversation may suffice as an appearance. *Lillehaugen,* 370 N.W.2d at 519. Even though we broadly interpret whether a person has appeared, relief is denied when a party is unable to factually demonstrate an appearance. *See Hatch,* 484 N.W.2d at 286 (concluding an appearance was not proven); *see also Lillehaugen,* 370 N.W.2d at 519 (identifying several cases in which this Court considered whether there was an appearance).

[¶ 15] The district court found attorney Renner called counsel for the Bank for the purpose of delaying execution of the judgment, not for the purpose of appearing. The court noted Renner did not indicate he was representing Arnold, nor did Renner suggest Arnold was seeking to appear. Distinguishing the facts of this case from previous decisions of this Court, the district court stated:

> Here, there was no indication by Mr. Renner that he wished Mr. Geiermann to consider the telephone call an appearance, that he was representing Mr. Arnold, or that he or Mr. Arnold intended to contest either the default judgment or the underlying merits of the case.
>
> . . . .
>
> Had any of those assertions been made during the telephone call or even shortly thereafter in correspondence or other form, it is likely the Court would, in broadly defining appearance, find that Mr. Arnold had appeared on October 13, 2000.

The district court also found "the topic of discussion between Mr. Renner and Mr. Geiermann was the potential for a delay of execution and an opportunity for the parties to work out a payment arrangement."

[¶ 16] In reaching the conclusion that Arnold had not appeared, the district court considered the affidavits of Arnold and Geiermann. In his affidavit reciting his account of the telephone conversation, Geiermann alleged:

> At no time during the conversation did Mr. Renner indicate that he was representing Mr. Arnold, that he was going to file either a Notice of Appearance or an Answer on Mr. Arnold's behalf, or that Mr. Arnold was going to contest the claim. The only request I received from Mr. Renner was to hold off on execution of the Judgment until a meeting could be held.

[¶ 17] At oral argument, counsel for Arnold agreed that the content of the conversation between Geiermann and Renner is a question of fact. By suggesting Arnold believed he had three weeks after the telephone call to "attempt to settle the matter," Arnold's affidavit only tangentially hints at the possibility of an appearance. Otherwise, the record contains no testimony or affidavits to dispute the critical factual issues determined by the district court.

[¶ 18] Arnold presented no evidence to rebut allegations that Renner was not representing him, that no appearance was intended by the telephone call, and that the entire purpose of the call was to negotiate the means by which the judgment against him would be executed. Because no evidence was introduced to rebut Geiermann's affidavit, we cannot conclude the district court's findings of fact were clearly erroneous under N.D.R.Civ.P. 52(a).

[¶ 19] Consequently, we conclude the underlying factual determinations of the district court aptly support the ultimate legal conclusion that Arnold did not appear. *See Hatch v. Hatch,* 484 N.W.2d 283, 286 (N.D.1992) (whether particular conduct is an appearance under N.D.R.Civ.P. 55 is a question of law, and an appearance must be factually demon-

strated). Because Arnold did not appear, the Bank was not required to provide him eight days' notice under N.D.R.Civ.P. 55.

## III

[¶ 20] We next address whether the district court erred in denying Arnold's motion to vacate the default judgment. Arnold argues multiple tragic circumstances require vacating the judgment. Because Arnold failed to establish a nexus between those circumstances and his failure to respond to the lawsuit, we conclude the district court did not abuse its discretion in denying the motion.

## A

[¶ 21] On appeal, to establish a basis for relief from a district court's denial of a motion for relief from a default judgment under N.D.R.Civ.P. 60(b), a party must demonstrate the district court abused its discretion. *Federal Land Bank of St. Paul v. Lillehaugen*, 370 N.W.2d 517, 518 (N.D.1985). "A district court abuses its discretion when it acts in 'an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law.' " *T.F. James Co. v. Vakoch*, 2001 ND 112, ¶ 5, 628 N.W.2d 298 (quoting *Berg v. Berg*, 2000 ND 37, ¶ 10, 606 N.W.2d 903).

[¶ 22] Based on this Court's preference for adjudication of claims on the merits, Arnold argues the district court has "limited discretion" to deny a motion to vacate default judgment. *See First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 795 (N.D.1986) (adjudication on the merits is preferred). Based on the competing interest of finality of judgment, the Bank argues this Court "will not overturn the trial court's decision [on a Rule 60(b) motion] merely because it is not the one we might have made had we decided the original

motion." *Greenwood v. American Family Ins. Co.*, 398 N.W.2d 108, 110 (N.D.1986).

[¶ 23] The Bank has more appropriately defined our standard of review. On appeal, a party seeking to disturb the finality of judgment under Rule 60(b) bears a heavy burden, which this Court has previously addressed:

An abuse of discretion by the trial court is never assumed and must be affirmatively established. An abuse of discretion is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. A movant for relief under Rule 60(b) has a burden of establishing sufficient grounds for disturbing the finality of the judgment. The moving party must also show more than that the lower court made a "poor" decision, but that it positively abused the discretion it has in administering the rule. We will not overturn that court's decision merely because it is not the one we may have made if we were deciding the motion.

*Bjorgen*, 389 N.W.2d at 794–95 (citations omitted).

## B

[¶ 24] In deciding Arnold was not entitled to relief from judgment under N.D.R.Civ.P. 60(b), the district court applied this Court's three-part test for vacating judgment. *See Bender v. Liebelt*, 303 N.W.2d 316, 318 (N.D.1981) (judgments may be reopened when a motion is promptly made, when the grounds stated satisfy the requirements of Rule 60, and when an answer appearing to state a meritorious defense is presented). The district court concluded Arnold's motion was timely and he presented a meritorious defense. The district court also concluded that Arnold failed to satisfy the requirements of N.D.R.Civ.P. 60(b).

[¶ 25] The district court's order cites Arnold's affidavit, in which Arnold alleges he was suffering from clinical depression. The court noted the averment was neither supported by medical evidence nor disputed by the Bank. The district court continued:

> Mr. Arnold's Affidavit states his depression was caused by his wife having been diagnosed with cancer, his son's suicide, his heart attack, and his brother's diagnosis of terminal cancer. Mr. Arnold elaborates that his brother's illness was "especially debilitating" mentally. Mr. Arnold says he spent much time thinking about his brother's cancer, and spent much time making trips to his brother's home ninety miles away from Steele. Mr. Arnold's Affidavit also points to business pressures as contributing to his excusable neglect.

> Mr. Arnold's [sic] claims "The undisputed facts show that [he] was emotionally disabled and incapable of responding to U.S. Bank's claims when he received the Complaint." ... The facts themselves may be undisputed. There is, however, a dispute as to the significance of those facts. The Bank points to Mr. Arnold's apparent ability to run his business as evidence that he was not incapacitated. The Court does not agree with the Bank's argument, based on *Thompson v. Goetz*, 455 N.W.2d 580 (N.D.1990) that a mental disability has to be connected with the case or parties to establish excusable neglect. However, in *Thompson* the defendant presented medical evidence as to his condition and, what is more important, how his condition affected him in relation to his actions in dealing with the litigation filed against him. Here, Mr. Arnold simply states he was clinically depressed, and his counsel argues in his brief that this clinical depression caused him to be unable to respond to the Complaint. This Court believes a person must do more to avoid the consequences of the Rules of Civil Procedure. Mr. Arnold has not established excusable neglect justifying vacating the default judgment.

The district court's rationale is clear: Arnold—the party with the burden—did not satisfactorily demonstrate that the multiple misfortunes he suffered led to excusable neglect, rendering him incapable of responding to the litigation.

[¶ 26] A person who is clinically depressed is not necessarily incapable of responding to litigation. Likewise, one who is busy at work or one who frequently travels to care for an ailing relative is not automatically incapable of responding to a summons and complaint. In his affidavit, Arnold stated:

> Due to my depression, my brother's medical condition and trips to my brother's home to help care for him and the difficult and busy time at work, I did not respond to the Summons and Complaint, even though I disagreed with the allegations in the Complaint.

The district court concluded, although the unfortunate facts "may be undisputed," there was a dispute regarding "the significance of those facts." The court concluded Arnold's simple statement that he was clinically depressed was insufficient.

[¶ 27] In *Thompson v. Goetz*, 455 N.W.2d 580, 588 (N.D.1990), this Court directed the trial court to vacate default judgment. The district court correctly stated that in *Thompson*, medical evidence was presented to establish a medical condition and to connect that condition with excusable neglect. Distinguishing *Thompson* from the present case, the district court stated that in *Thompson*, evidence was presented to establish "how his condition affected him in relation to his actions

in dealing with the litigation filed against him." We have recognized the necessity of presenting sufficient evidence to establish a medical condition that bears a relationship to exceptional circumstances required by N.D.R.Civ.P. 60(b):

> Under Rule 60(b), a decision to submit only certain evidence at a stage in the proceedings generally cannot later constitute exceptional circumstances justifying relief from a judgment. "[A] Rule 60(b) motion is not to be used to relieve a party from free, calculated, and deliberate choices." Such "[m]ere misjudgment or careless failure to evaluate do[es] not suffice." "A party remains under a duty to take legal steps to protect his own interests."

*Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, ¶ 11, 609 N.W.2d 90 (citations omitted). In *Follman*, we concluded a personal affidavit of a medical condition was insufficient in the context of summary judgment. *Id.* at ¶ 12.

 [¶ 28] Like evidence of a medical condition, evidence of an ailing relative or a heavy work schedule does not necessarily amount to excusable neglect. The burden of connecting sufficient evidence to excusable neglect rests on the moving party. Arnold was "under a duty to take legal steps to protect his own interests." *Id.* at ¶ 11 (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2864, at 359 (2d ed.1995)). Arnold submitted only a personal affidavit. Without evidence connecting the affidavit averments to excusable neglect, we cannot conclude the district court abused its discretion. Relief under N.D.R.Civ.P. 60(b) is extraordinary. Under the circumstances of this case, the district court did not abuse its discretion in concluding Arnold failed to present sufficient evidence to justify extraordinary relief.

## IV

[¶ 29] Arnold failed to prove he appeared, and therefore he was not entitled to eight days' notice before entry of default judgment. The district court did not abuse its discretion in denying Arnold's motion to vacate default judgment. The district court's order denying Arnold's motion to vacate default judgment is affirmed.

[¶ 30] WILLIAM A. NEUMANN, Acting C.J., CAROL RONNING KAPSNER, J., and GERALD G. GLASER, S.J.

[¶ 31] The Honorable RICHARD W. GROSZ, D.J., and the Honorable GERALD G. GLASER, S.J., sitting in place of MARING, J., and Vande WALLE, C.J., disqualified.

RICHARD W. GROSZ, District Judge, concurring in part and dissenting in part.

[¶ 32] I concur with the majority's conclusion that an appearance was not made by Arnold in this case thereby requiring notice by the Bank to Arnold prior to the Bank seeking default judgment. The Trial Court's factual determination that the substance of the telephone call was an agreement to stay execution on the then pending Order for Default Judgment was not clearly erroneous. An appearance for purposes of Rule 55(a)(3), N.D.R.Civ.P., must, at minimum, contain some indication that the matter is being contested or disputed. *Throndset v. Hawkenson*, 532 N.W.2d 394, 397 (N.D.1995), citing *Hatch v. Hatch*, 484 N.W.2d 283, 285 (N.D.1992). Here, the telephone contact concerned only an agreement to stay execution on a judgment both parties contemplated being entered pending further settlement discussions.

[¶ 33] I dissent from the majority's holding that the Trial Court did not abuse the Trial Court's discretion in denying Arnold's Rule 60(b) Motion to Vacate the

Default Judgment. The Trial Court focused and ruled solely on one reason (clinical depression) proffered by Arnold for excusable neglect: "...Here, Mr. Arnold simply states he was clinically depressed, and his counsel argues in his brief that this clinical depression caused him to be unable to respond to the Complaint. This Court believes a person must do more to avoid the consequences of the Rules of Civil Procedure. Mr. Arnold has not established excusable neglect justifying vacating the default judgment." The Trial Court did not rule on or utilize in any manner, the other proffered reasons given by Arnold for excusable neglect, specifically, Arnold's brother's terminal cancer in July, 2000, which "...was especially debilitating to me mentally and his condition occupied my thoughts much of the time. I also spent much time making trips to my brother's home in Esmond, North Dakota, a ninety minute trip from my home in Steele, to assist with his care and to spend time with his family..." and "...August, September, and October, 2000 also were very difficult and a busy time for me at Denny's Lumber. As the sole owner of Denny's Lumber and with only part-time help, all of the business affairs at Denny's Lumber are handled exclusively by me. I was overwhelmed with work during this time." The record indicates that Arnold's clinical depression was diagnosed in May, 1998, well before Arnold's brother's cancer and Arnold's work load in August through October, 2000.

[¶ 34] When one is unable to determine whether the Trial Court abused the Trial Court's discretion because the Trial Court, without explanation, made no rulings on material and relevant factual issues, discretion has been abused.

[¶ 35] Arnold also proffered that before receiving copies of the default motion papers from the Bank's Attorney, "...I was not completely aware that I had been sued or that there could be any consequences if I did not respond to the Complaint." The Trial Court did not specifically rule on this factual assertion which, in essence, asserts the effect all of the proffered reasons for excusable neglect.

[¶ 36] There is no dispute that timely relief from default judgment was sought and the Trial Court ruled that a meritorious defense had been interposed by Arnold.

[¶ 37] "This court has long encouraged trial courts to be more lenient when entertaining Rule 60(b) motions to vacate default judgments as distinguished from "litigated" judgments, that is, judgments entered after trial on the merits. *E.g., Suburban Sales v. District Court of Ramsey,* 290 N.W.2d 247, 252 (N.D.1980); *Perdue v. Sherman,* 246 N.W.2d 491, 496 (N.D.1976). While a trial court certainly has discretion to grant or deny a Rule 60(b) motion to vacate a default judgment [*First Federal Savings and Loan Ass'n v. Hulm,* 328 N.W.2d 837 (N.D.1982) ], the range of that discretion is limited by three important considerations. *See Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir. 1974). First, Rule 60(b) is remedial in nature and should be liberally construed and applied. *Sioux Falls Construction Co. v. Dakota Flooring,* 109 N.W.2d 244, 247 (N.D.1961). Second, decisions on the merits are preferable to those by default. *Bender v. Liebelt,* 303 N.W.2d 316, 318 (N.D.1981). Third, as a consequence of the first two considerations, " '[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits.' " *King v. Montz,* 219 N.W.2d 836, 839 (N.D.1974) [quoting 7 Moore's Federal Practice ¶ 60.19, at p. 60–

156]." *CUNA Mortgage v. Aafedt,* 459 N.W.2d 801, 803 (N.D.1990).

[¶ 38] Here, timely relief has been sought and a meritorious defense interposed. Doubt is present because the Trial Court did not rule on relevant and material factual issues and because of this doubt, Arnold's Rule 60(b) Motion should be resolved in his favor and a resolution of the parties' dispute should be made on the merits.