2001 ND 207

Lynetta K. GEPNER and Donald Kroll, Plaintiffs and Appellants,

v.

FUJICOLOR PROCESSING, INC. OF SIOUX FALLS, SOUTH DAKOTA, U.S.A., and Fuji Photo Film U.S.A., Inc., principle consolidated subsidiaries of Fuji Photo Film Co., Ltd. of Tokyo, Japan, Defendants and Appellees.

No. 20010022.

Supreme Court of North Dakota.

Dec. 21, 2001.

Rehearing Denied Jan. 25, 2002.

Bruce A. Schoenwald, Stefanson, Plambeck, Foss & Fisher, Moorhead, MN, for plaintiffs and appellants.

Daniel J. Dunn, Maring Williams Law Office, Fargo, for defendants and appellees.

NEUMANN, Justice.

[¶ 1]  Lynetta Gepner and Donald Kroll appeal from a judgment entered upon a jury verdict awarding Gepner damages for a work-related injury, finding Fujicolor Processing, Inc. ("Fujicolor") had not wrongfully terminated Gepner's employment, and refusing to award damages to Kroll for loss of consortium.  We affirm.

I

[¶ 2]  Gepner worked as a film delivery driver for Fujicolor.  Gepner picked up film at retail stores in North Dakota and Minnesota and delivered it to a relay driver, who transported the film to Fujicolor's processing plant in South Dakota.  The processed film was then returned to Gepner, who delivered it back to the stores.  Gepner did not travel into South Dakota on her route.

[¶ 3]  On August 4, 1998, Gepner injured her back while lifting film bags out of her car at the Wal–Mart in Grand Forks.  Gepner was able to complete her route that day with assistance from her husband, Donald Kroll.  Gepner subsequently advised her supervisor, Jill Campbell, about her injury.  Campbell believed that Gepner would continue to deliver the route with assistance from Kroll.  For the next several weeks, however, Kroll delivered Gepner's route alone.  Gepner signed and submitted route manifests and timecards indicating she was delivering the film.  Under Fujicolor's policies for its delivery drivers, an employee may receive assistance from a non-employee, but the employee must personally deliver the film, interact with customers, and sign the route manifests documenting delivery of the film.

[¶ 4]  On August 20, 1998, Gepner contacted Campbell about her injury, and Campbell filled out a form entitled "South Dakota Employer's First Report of Injury."  Campbell sent the form to Gepner for her signature, but Gepner returned it unsigned because it contained the wrong date of her injury.

[¶ 5]  At some point, Fujicolor learned Kroll was delivering the route alone.  On September 11, Kroll met the Fujicolor relay driver in Fargo.  The relay driver was supposed to deliver Gepner's paycheck, but had forgotten it in Sioux Falls.  Kroll refused to complete the deliveries without Gepner's paycheck, and Campbell was notified.  Campbell called Gepner and asked her to arrange to have the film delivered.  Gepner told Campbell she was physically unable to deliver the film.  Campbell then told Gepner she was fired.

[¶ 6] Gepner had filed a claim with the North Dakota Workers Compensation Bureau on September 3, 1998. The Bureau contacted Fujicolor, which advised the Bureau that Gepner was a South Dakota employee based out of Sioux Falls who made deliveries in North Dakota, South Dakota, and Minnesota, and that a claim had been filed with Great American Insurance Companies ("GAIC"), Fujicolor's South Dakota workers compensation insurer. Based on this information, the Bureau dismissed Gepner's claim on September 11, 1998.

[¶ 7] GAIC denied coverage because Gepner was a North Dakota employee injured in North Dakota, and GAIC's policy did not provide coverage in this state. Fujicolor concedes that it had failed to secure coverage in North Dakota through the Bureau as required by law. Gepner reapplied for benefits in North Dakota under N.D.C.C. § 65–09–02 as an employee of a noncomplying employer, and the Bureau eventually awarded benefits to her in February 1999.

[¶ 8] Gepner and Kroll commenced this action against Fujicolor, seeking damages for the work injury, wrongful termination, and loss of consortium. The summons and complaint were mailed to Fujicolor on October 6, 1998, and received on October 8. On October 21, 1998, Fujicolor sent the complaint to GAIC, where it was received by Merrick McCarthy, GAIC's Director of Liability—Japanese Division, on October 23. Although an answer to the complaint was due within a few days, McCarthy did not refer the file to an attorney or otherwise initiate a responsive pleading.

[¶ 9] On December 11, 1998, a default judgment was entered against Fujicolor awarding Gepner $228,670.05 and awarding Kroll $51,027.40. On December 15, 1998, McCarthy, unaware a default judgment had been entered, contacted Gep-

ner's attorney to discuss the claim and was advised of the default judgment.

[¶ 10] On January 12, 1999, Fujicolor filed a motion to vacate the judgment under N.D.R.Civ.P. 60(b)(i), alleging mistake, inadvertence, and excusable neglect. The district court granted the motion and vacated the default judgment. The matter was eventually tried to a jury, which awarded Gepner $11,946.25 in damages for her work injury, found Gepner had not been wrongfully terminated, and awarded no damages on the loss of consortium claim. Judgment was entered on the jury verdict, and Gepner and Kroll appealed.

## II

[¶ 11] Gepner alleges the district court abused its discretion when it vacated the default judgment against Fujicolor. We disagree.

[¶ 12] Rule 60(b), N.D.R.Civ.P., governs the trial court's authority to vacate a judgment:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment or order in any action or proceeding for the following reasons: (i) mistake, inadvertence, surprise, or excusable neglect. . . .

[¶ 13] A motion to vacate a judgment under N.D.R.Civ.P. 60(b)(i) lies within the sound discretion of the trial court, and its decision will not be disturbed on appeal unless the court has abused its discretion. *Kopp v. Kopp*, 2001 ND 41, ¶ 7, 622 N.W.2d 726; *Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, ¶ 10, 609 N.W.2d 90; *Red River State Bank v. Reierson*, 533 N.W.2d 683, 688 (N.D.1995). An abuse of discretion by the trial court is never assumed; the burden is on the party seeking relief to affirmatively establish it. *US Bank Nat'l Ass'n v. Ar-*

*nold,* 2001 ND 130, ¶ 23, 631 N.W.2d 150; *Braunberger v. Interstate Eng'g, Inc.,* 2000 ND 45, ¶ 7, 607 N.W.2d 904; *First Nat'l Bank of Crosby v. Bjorgen,* 389 N.W.2d 789, 794 (N.D.1986). The trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner. *Kopp,* at ¶ 7; *Follman,* at ¶ 10. A trial court acts in an arbitrary, unreasonable, or unconscionable manner when its decision is not the product of a rational mental process by which the facts and law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination. *Kopp,* at ¶ 7. We will not overturn the trial court's decision merely because it is not the one we may have made if we were deciding the motion. *US Bank,* at ¶ 23.

[¶ 14] This Court has emphasized that N.D.R.Civ.P. 60(b) is to be liberally construed and applied, and trial courts should be more lenient in granting motions to vacate default judgments than in vacating judgments in cases which have been tried on their merits. *First Fed. Sav. and Loan Ass'n v. Hulm,* 328 N.W.2d 837, 840 (N.D. 1982); *Suburban Sales & Serv., Inc. v. District Court of Ramsey County,* 290 N.W.2d 247, 252 (N.D.1980). The relevant factors were summarized in *CUNA Mortgage v. Aafedt,* 459 N.W.2d 801, 803 (N.D. 1990) (citations omitted):

This court has long encouraged trial courts to be more lenient when entertaining Rule 60(b) motions to vacate default judgments as distinguished from "litigated" judgments, that is, judgments entered after trial on the merits. While a trial court certainly has discretion to grant or deny a Rule 60(b) motion to vacate a default judgment, the range of that discretion is limited by three important considerations. First, Rule 60(b) is remedial in nature and should be liberally construed and applied. Second, decisions on the merits are preferable to those by default. Third, as a consequence of the first two considerations, " '[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits.' " *King v. Montz,* 219 N.W.2d 836, 839 (N.D. 1974) [quoting 7 Moore's Federal Practice ¶ 60.19, at p. 60–156].

*See also Throndset v. L.L.S.,* 485 N.W.2d 775, 778–79 (N.D.1992). The Court noted that, "[a]gainst this backdrop," parties seeking to show that a trial court abused its discretion in vacating a default judgment "shoulder a heavy burden." *CUNA Mortgage,* at 803.

[¶ 15] We have also cautioned that, when the inadvertence or neglect has been committed by a party's attorney or insurer, we are reluctant to attribute the error to a client who was not personally responsible. *See CUNA Mortgage,* 459 N.W.2d at 803; *Hulm,* 328 N.W.2d at 841; *King v. Montz,* 219 N.W.2d 836, 840 (N.D.1974).

[¶ 16] In this case, the failure to file a timely answer to the complaint was due to the inadvertence and neglect of GAIC, Fujicolor's insurer. Upon learning of the default judgment a few days after it was entered, GAIC immediately referred the matter to a North Dakota attorney, who contacted Gepner's attorney and filed a motion to vacate the judgment. Gepner does not allege the motion was untimely. With its motion to vacate the judgment, Fujicolor filed an answer raising meritorious defenses to claims in the complaint. Under these circumstances, we conclude the trial court did not abuse its discretion in granting the motion to vacate the default judgment.

### III

[¶ 17] Gepner asserts the trial court erred in allowing Fujicolor to pres-

ent evidence challenging Gepner's claimed damages because the Bureau's determinations on damages were res judicata. We disagree.

[¶ 18] Fujicolor concedes that it failed to secure workers compensation coverage for Gepner as required by North Dakota law. Proceedings by an injured employee against an uninsured employer are governed by N.D.C.C. ch. 65–09. Under that chapter, an employee of an uninsured employer may seek and recover benefits under the Workers Compensation Act, and also sue the employer in tort for damages:

> An employee whose employer is in violation of section 65–04–33, who has been injured in the course of employment, ... may file an application with the bureau for an award of compensation under this title and in addition may maintain a civil action against the employer for damages resulting from the injury or death. In the action, the employer may not assert the common-law defenses of:
>
> 1. The fellow servant rule.
> 2. Assumption of risk.
> 3. Contributory negligence.
>
> The bureau is subrogated to the recovery made in the action against the uninsured employer.... The bureau shall notify the claimant and the employer that the matter is being processed under this chapter, and subsequently shall hear and determine the application for compensation as it would for other claims before the bureau.

N.D.C.C. § 65–09–02. Gepner has availed herself of the dual remedies under the statute: she has received benefits under the Act and has filed a separate civil action against Fujicolor for damages caused by the work injury.

[¶ 19] In addition to the limitation in N.D.C.C. § 65–09–02 on common law defenses to liability, Gepner argues Fujicolor should not have been allowed to challenge or present evidence on the issue of damages. Gepner contends the Bureau's determinations on damage issues should have been res judicata under N.D.C.C. § 65–05–03, which provides:

> The bureau shall have full power and authority to hear and determine all questions within its jurisdiction, and its decisions, except as provided in chapter 65–10, are final and are entitled to the same faith and credit as a judgment of a court of record.

[¶ 20] Res judicata generally prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which were resolved by a final judgment in a court of competent jurisdiction. *Ohio Cas. Ins. Co. v. Clark*, 1998 ND 153, ¶ 23, 583 N.W.2d 377; *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992). Determinations by administrative agencies, including the Bureau, may likewise be given res judicata effect if the conventional elements of res judicata are present. *See Westman v. Dessellier*, 459 N.W.2d 545, 547 (N.D.1990); *Vanover v. Kansas City Life Ins. Co.*, 438 N.W.2d 524, 526 (N.D. 1989); *Stine v. Weiner*, 238 N.W.2d 918, 925–26 (N.D.1976); 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 127.07[2] & [5]. Under traditional res judicata principles, the doctrine is not applicable to issues not considered or decided in the prior proceeding, and the doctrine applies only when the issues in the prior and current proceedings are "substantially identical." *Nodland v. Nokota Co.*, 314 N.W.2d 89, 92 (N.D.1981); *see also Hofsommer*, 488 N.W.2d at 384 (under related doctrine of collateral estoppel, issues must be identical).

[¶ 21] In this case, the damage issues in the current action can hardly be said to

be substantially identical to the issues determined by the Bureau. The civil action created under N.D.C.C. § 65-09-02 is in the nature of a tort action, and allows the employee to recover damages resulting from the injury. The legislative history to the 1995 amendment to N.D.C.C. § 65-09-02, which created the separate civil action against the noncomplying employer, clarifies that it is a personal injury lawsuit, not limited to the remedies available under the Workers Compensation Act:

> The Bill provides that an employee of an uninsured employer may file and receive workers compensation benefits *and in addition* may maintain a lawsuit against the uninsured employer for damages caused by the injury.... The threat of personal injury lawsuits and potentially large damage awards should provide uninsured employers with ample incentive to request and pay for the protections of workers compensation coverage and the exclusive remedy, instead of taking their chances on being uninsured.

*Hearing on H.B. 1329 Before the House Industry, Business and Labor Comm.,* 54th N.D. Legis. Sess. (Jan. 23, 1995) (testimony of Robert W. Morris, Assistant Attorney General, representing the Workers Compensation Bureau). Accordingly, under N.D.C.C. § 65-09-02, a noncomplying employer is liable in a civil action for all damages resulting from the work injury, and those damages are to be determined under the standards and measures applicable in traditional tort-based personal injury actions.

[¶ 22] By contrast, the Bureau does not assess damages under the tort measure, but determines only compensability under the statutory provisions of the Workers Compensation Act. Whether, and to what extent, damages from an injury are compensable under the Act is a separate and wholly distinct issue from tort damages in a personal injury action. Consequently, the issues decided by the Bureau in determining benefits under the Act are not substantially identical to the damage issues presented in the separate civil action based upon tort principles.

[¶ 23] Gepner asserts this Court's holding in *Westman* supports a broad application of the doctrine of res judicata to decisions by the Bureau. Although *Westman* recognizes that a decision of the Bureau may have res judicata effect in a subsequent lawsuit, it does not support application of res judicata in this case. In *Westman,* this Court held the trial court should have given res judicata effect to the Bureau's earlier decision that Westman was an employee at the time of his injury and was entitled to compensation under the Act. *See Westman,* 459 N.W.2d at 547. The relevant issue in the civil action was whether the action was barred by the exclusive remedy provision of the Workers Compensation Act. Because the issues decided by the Bureau were identical to the issues presented to the trial court in the subsequent lawsuit, res judicata applied. *Westman* does not hold, however, that the Bureau's determination of the extent and amount of compensation for an injury under the Act is res judicata of the amount of damages recoverable in tort in a separate personal injury action against a noncomplying employer under N.D.C.C. § 65-09-02.

[¶ 24] Gepner also argues that *State ex rel. Woods v. Hughes Oil Co.,* 58 N.D. 581, 226 N.W. 586 (1929), requires a noncomplying employer to compensate an injured employee for the amount the employee would have received under the Act if the employer had been insured. Gepner relies upon the following language in *Hughes Oil:*

An employer who fails to comply with the act has imposed upon him by operation of law an absolute liability without regard to any question of fault in all cases where liability for compensation would have existed on the part of the workmen's compensation fund in case the employer had complied with the act. An employer who has failed to comply with the act, and whose employee is injured in the course of his employment by reason of the negligence of some person other than the employer or a fellow employee, is, of course, liable to his employee for compensation under the act. Such liability exists, not on account of the wrongful conduct of the tort-feasor, but on account of his own wrongful conduct in failing to comply with the Workmen's Compensation Act.

*Hughes Oil*, 58 N.D. at 598–99, 226 N.W. at 593. Gepner fails to acknowledge, however, that the Court in *Hughes Oil* was interpreting a statutory scheme wholly different from the current one. Under the version of the Act in effect at that time, an employee of a noncomplying employer had the option of suing the employer in tort or filing a claim with the Bureau. *See* 1919 N.D. Sess. Laws ch. 162, § 11; *Hughes Oil*, 58 N.D. at 590, 226 N.W. at 589–90. The statute specifically provided that, if the employee filed a claim with the Bureau for compensation under the Act, the employer was required to pay the employee the amount of compensation the Bureau determined was due under the provisions of the Workmen's Compensation Act:

> Any employee whose employer has failed to comply with the provisions of Sections six and seven hereof, who has been injured in the course of his employment ... may, in lieu of proceedings against his employers by civil action in the court, file his application with the Workmen's Compensation Bureau for compensation in accordance with the terms of this Act, and the Bureau shall hear and determine such application for compensation in like manner as in other claims before the Bureau; and the amount of the compensation which said Bureau may ascertain and determine to be due to such injured employee ... shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the Bureau....

1919 N.D. Sess. Laws ch. 162, § 11; *see also Hughes Oil*, 58 N.D. at 590, 226 N.W. at 589–90. *Hughes Oil* is clearly distinguishable.

[¶ 25] We conclude the trial court did not err in refusing to hold the Bureau's prior determinations on damages were res judicata, and in allowing Fujicolor to present evidence on the issue of damages.

## IV

[¶ 26] Gepner contends the trial court erred in granting Fujicolor's motion for an independent mental examination of Gepner. We disagree.

[¶ 27] During pretrial discovery, Fujicolor moved for an order requiring Gepner to undergo a mental examination with Dr. Susan Phipps Yonas, a licensed clinical psychologist. The trial court granted the motion and ordered Gepner to undergo the examination.

[¶ 28] Rule 35(a), N.D.R.Civ.P., governs independent physical and mental examinations of parties:

> If the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner....

[¶ 29] Rule 35(a) vests wide discretion in the trial court in determining whether to require a party to submit to a physical or mental examination. *Guskjolen v. Guskjolen*, 391 N.W.2d 639, 641 (N.D.1986); *Stroschein v. Stroschein*, 390 N.W.2d 547, 549 (N.D.1986); *Lucke v. Lucke*, 300 N.W.2d 231, 235 (N.D.1980). The trial court's determination will only be overturned on appeal if there has been an abuse of that discretion. *See Guskjolen*, at 641; *Stroschein*, at 549. An abuse of discretion by the trial court is never assumed and must be affirmatively established. *US Bank Nat'l Ass'n v. Arnold*, 2001 ND 130, ¶ 23, 631 N.W.2d 150; *Braunberger v. Interstate Eng'g, Inc.*, 2000 ND 45, ¶ 7, 607 N.W.2d 904. A trial court abuses its discretion only when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Farmers Alliance Mut. Ins. Co. v. Hulstrand Constr. Co.*, 2001 ND 145, ¶ 10, 632 N.W.2d 473.

[¶ 30] Gepner contends the trial court erred in ordering a mental examination under Rule 35(a) because Gepner never placed her mental condition "in controversy" as required by the rule. Gepner relies upon cases, construing the corresponding federal rule and similar state rules, which conclude that a plaintiff does not place her mental condition in controversy merely by pleading "garden variety" pain, suffering, mental anguish, or emotional distress as elements of her damages. *See, e.g., Ricks v. Abbott Labs.*, 198 F.R.D. 647, 648–49 (D.Md.2001); *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 668–69 (S.D.Cal. 2001); *O'Sullivan v. State of Minn.*, 176 F.R.D. 325, 327–28 (D.Minn.1997); *Smith v. J.I. Case Corp.*, 163 F.R.D. 229, 230–31 (E.D.Pa.1995); *LeGendre v. Monroe County*, 234 Mich.App. 708, 600 N.W.2d 78, 86–92 (1999). These cases generally conclude that a mental evaluation can be ordered under Rule 35 when the plaintiff (1) pleads a specific cause of action for intentional or negligent infliction of emotional distress; (2) pleads a specific mental or psychiatric injury or disorder; (3) claims unusually severe emotional distress; (4) offers expert testimony to support a claim of emotional distress; or (5) concedes her mental condition is in controversy. *See Ricks*, 198 F.R.D. at 648–49; *O'Sullivan*, 176 F.R.D. at 328.

[¶ 31] Most of the cases cited by Gepner addressed only whether inclusion in the complaint of boilerplate allegations of mental anguish or emotional distress, standing alone, placed the pleading party's mental condition in controversy. The genesis of this reasoning is the oft-quoted language from the seminal Supreme Court case on F.R.Civ.P. 35(a), *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), stating that the "in controversy" and "good cause" requirements of the rule "are not met by mere conclusory allegations of the pleadings." Illustrative of the cases following *Schlagenhauf* is *O'Sullivan*, in which the court, after quoting *Schlagenhauf*, concluded:

> Here, the Complaint's bare and boilerplate allegations of "mental anguish," "emotional distress," and "embarrassment and humiliation," provide a legally insufficient basis for concluding that the Plaintiff's mental condition is "genuinely in controversy," or that "good cause exists for ordering [the] examination." We are mindful that some Courts have concluded that—standing alone—a plaintiff's allegation of emotional pain and distress, suffered at the instance of the defendants, is sufficient to allow a finding that her mental state has been placed in controversy, but we continue to disagree, respectfully, with such a construction of the "in controversy" element.

*O'Sullivan,* 176 F.R.D. at 327–28 (citation omitted).

[¶ 32] The Court in *Schlagenhauf,* however, made it clear that, if a party's pleadings standing alone do not place her mental condition in controversy, that is not the end of the inquiry. *Schlagenhauf* recognizes that a defendant may place an opposing party's mental condition in controversy by independent evidence:

> [T]he "in controversy" and "good cause" requirements of Rule 35 . . . are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. . . .
>
> Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.
>
> . . . .
>
> . . . Schlagenhauf did not assert his mental or physical condition either in support of or in defense of a claim. His condition was sought to be placed in issue by other parties. Thus, under the principles discussed above, Rule 35 required that these parties make an affirmative showing that petitioner's mental or physical condition was in controversy and that there was good cause for the examinations requested.

*Schlagenhauf,* 379 U.S. at 118–20, 85 S.Ct. 234 (citation omitted); *see also* 7 James Wm. Moore et al., Moore's Federal Practice § 35.03[1][a] (3d ed.2001).

[¶ 33] Thus, *Schlagenhauf* clearly recognizes that, where a party's pleadings do not, standing alone, place her mental condition in controversy, the opposing party may still demonstrate through other evidence that the party's mental condition is in controversy. In this case, in support of its motion for a mental examination under N.D.R.Civ.P. Rule 35, Fujicolor presented independent evidence that Gepner was being treated for depression, had demonstrated "extreme pain behaviors" on a work tolerance assessment, had demonstrated "inappropriate illness behavior" on the McGill Pain Questionnaire administered as part of the work tolerance assessment, and had on one occasion after the work injury suffered seizure-like symptoms which an emergency room physician believed could be related to a "psychological overlay/anxiety reaction." Fujicolor presented evidence suggesting there may have been an underlying psychological basis for, or exaggeration of, Gepner's pain. Under these unique circumstances, it was within the trial court's discretion to determine whether Fujicolor had adequately demonstrated Gepner's mental condition was "in controversy" and to decide whether to order the examination.

[¶ 34] Our decision in this case should not be viewed as an open invitation for defendants to attempt psychiatric fishing expeditions under Rule 35 in run-of-the-mill personal injury cases. The Court in *Schlagenhauf* expressly cautioned against such a result:

The Federal Rules of Civil Procedure should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations. The "good cause" and "in controversy" requirements of Rule 35 make it very apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident—or, as in this case, two accidents—and a general charge of negligence is lodged. Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases. The plain language of Rule 35 precludes such an untoward result.

*Schlagenhauf,* 379 U.S. at 121–22, 85 S.Ct. 234 (footnote omitted). The court in *Smith,* 163 F.R.D. at 232, expressed it more bluntly:

The practice seems to be more and more in vogue of late for defendants to seek to partake of the *in terrorem* tactic of visiting upon a plaintiff a particularly intrusive incursion: examination by a psychiatrist, and other psychological delvings.

. . . .

In so stating, I by no means suggest—even though it is beyond the factual ambit before me—that psychiatric and psychological exams are never called for. The rules expressly call for them, and properly so. Many is the situation when they are a necessary and proper tool for fingering the mental malingerer, exposing the hyper-emotional charlatan. I only suggest that in cases such as this one—your basic garden-variety tort quest for damages, to include pain and suffering—psychiatric examination should be the exception, not the rule.

[¶ 35] We conclude the trial court did not abuse its discretion in ordering Gepner to undergo a mental examination under N.D.R.Civ.P. 35(a).

## V

■■■ [¶ 36] Gepner argues the trial court erred in denying her motion under N.D.R.Civ.P. 50 for judgment as a matter of law on the wrongful termination claim.

[¶ 37] We recently summarized our standard of review of a trial court's determination on a Rule 50 motion:

The standard of review on a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is the same as the standard applied to motions for directed verdict before the rule was modified in 1994. The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to grant or deny judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In determining whether the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evi-

dence. A trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal. *Greenwood v. Paracelsus Health Care Corp.*, 2001 ND 28, ¶ 6, 622 N.W.2d 195 (quoting *Peterson v. Traill County*, 1999 ND 197, ¶ 7, 601 N.W.2d 268).

[¶ 38] Gepner argues she presented a prima facie case of wrongful termination through evidence establishing the proximity in time between her filing of a workers compensation claim and her termination. In reviewing a trial court's denial of a plaintiff's Rule 50 motion, however, our inquiry is not whether the plaintiff has established a prima facie case. Rather, our standard of review in this case requires that we look at all of the evidence presented, view all of the evidence and reasonable inferences therefrom in the light most favorable to Fujicolor as the nonmoving party, and determine if the evidence leads to only "one conclusion as to the verdict about which there can be no reasonable difference of opinion." *Greenwood*, at ¶ 6 (quoting *Peterson*, at ¶ 7).

[¶ 39] There was conflicting evidence presented on the reason for Gepner's termination. Gepner's supervisor, Jill Campbell, testified that on August 26, 1998, she learned Kroll was delivering Gepner's route alone, in violation of Fujicolor's company policy. Campbell also testified Gepner falsified route manifests and timecards, indicating Gepner was delivering the route when Kroll was in fact delivering it. Campbell testified she discussed the situation with the human resources manager in the Sioux Falls office and ultimately with other Fujicolor corporate managers, and on September 9, 1998, she was authorized to terminate Gepner's employment for her violations of company policy.

[¶ 40] On this record, viewing the evidence in the light most favorable to Fujicolor, the evidence does not lead to only one conclusion about which there could be no reasonable difference of opinion. We therefore conclude the trial court did not err in denying the motion for judgment as a matter of law and submitting the issue to the jury.

VI

[¶ 41] We have considered the remaining issues raised by Gepner and Kroll and find them to be without merit. The judgment is affirmed.

[¶ 42] GERALD W. VANDEWALLE, C.J., LAURIE A. FONTAINE, D.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 43] The Honorable LAURIE A. FONTAINE, D.J., sitting in place of MARING, J., disqualified.