2008 ND 112

**David A. OVERBOE, Plaintiff
and Appellant**

v.

**Susanne BRODSHAUG, Defendant
and Appellee.**

**No. 20070263.**

Supreme Court of North Dakota.

June 5, 2008.

David A. Overboe, pro se, Fargo, ND, plaintiff and appellant.

Christopher M. McShane, Ohnstad Twichell, P.C., West Fargo, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] David Overboe appeals from an order vacating a default judgment that had

awarded him $21,334.57 and from a subsequent judgment awarding him $3,642.75 in his action against Susanne Brodshaug to collect attorney fees for representing her in a divorce action. We conclude the district court did not abuse its discretion in vacating the default judgment, did not err in allowing Brodshaug to use defensive recoupment to Overboe's collection action, did not err in refusing to apply N.D.C.C. §§ 13–01–14 and 13–01–15 to Overboe's claims, and did not err in applying the usury statutes to his action. We affirm the order vacating the default judgment and the subsequent judgment.

I

[¶ 2] In 1996, Overboe orally agreed to represent Brodshaug in her divorce action. After a trial, a divorce judgment was entered in May 1997. In April 1998, Overboe filed a post-judgment motion in the divorce action, seeking to find Brodshaug's ex-husband in contempt and to vacate property division and spousal support provisions in the divorce judgment. The court denied Brodshaug's motion in June 1998, concluding she had failed to follow the proper procedure for contempt or for relief from the divorce judgment.

[¶ 3] In February 1999, Overboe served a summons and complaint on Brodshaug in this collection action, seeking $11,145.01 for legal fees and service charges for his representation of her in the divorce action. Brodshaug's counsel served Overboe with a notice of appearance in March 1999. In January 2004, Overboe filed the summons and complaint in the district court and served Brodshaug's counsel with an affidavit, an eight-day notice before entry of a default judgment, and a notice of hearing for a default judgment under N.D.R.Civ.P. 55. Brodshaug served and filed an answer in February 2004, denying she owed Overboe the amount sought in his complaint, claiming his calculation of service charges violated N.D.C.C. §§ 47–14–09 and 47–14–10, and alleging Overboe was not entitled to recover attorney fees for his negligent representation of her in the post-judgment proceedings. In February 2004, the district court held a hearing on Overboe's request for a default judgment, at which Overboe submitted an affidavit of proof stating Brodshaug owed him "$11,145.01 plus service charges, costs and disbursements in the amount of $10,189.56 for legal services performed." At the hearing, the court noted that neither Brodshaug nor her counsel were present and that her counsel's office had been telephoned to ask whether counsel would be attending the hearing. The court stated it had been informed counsel was out of the office. In March 2004, the court entered a default judgment against Brodshaug for $21,334.57. Overboe did not thereafter serve Brodshaug with a notice of entry of the default judgment.

[¶ 4] In November 2006, Brodshaug moved to vacate the default judgment. The district court granted Brodshaug's motion and vacated the default judgment. Overboe thereafter replied to Brodshaug's answer, asserting her legal malpractice claim was barred by a two-year statute of limitations. The court subsequently denied Overboe's motion for summary judgment on his assertion that Brodshaug's legal malpractice claim was barred by the two-year statute of limitations. In February 2007, Brodshaug disclosed that her expert witness, Mark Fraase, was expected to testify at trial regarding "divorce procedures, spousal support, and other related matters."

[¶ 5] After a bench trial, the district court found Overboe and Brodshaug entered into an oral agreement for Overboe to represent Brodshaug in her divorce; the agreement included an understanding

for the price of the services but did not include an agreement for service charges or late fees for unpaid balances; the parties agreed Brodshaug would pay Overboe upon completion of his representation of her; Overboe worked for Brodshaug until June 1998; Brodshaug owed Overboe $8,455.50 for legal services, of which $3,598.50 represented legal services for her post-judgment motion, which the court found Overboe did not perform in a reasonably careful and competent manner; Overboe sporadically sent Brodshaug bills, with no billing statements from August 1998 to December 2006; from February 1997 until August 1998, Overboe charged Brodshaug a monthly service charge of 1.5 percent per month on all unpaid balances, including past service charges and charges less than 30 days old; and the parties agreed Overboe would extend credit to Brodshaug until Overboe had completed his representation of her. The court decided N.D.C.C. § 13–01–14 was not applicable because Overboe intended to extend credit for a period beyond thirty days and he had failed to comply with the monthly notice requirement for billings in N.D.C.C. § 13–01–15. The court decided the interest charged by Overboe for the unpaid balance of attorney fees exceeded the rate allowed under N.D.C.C. § 47–14–09 and was usurious, ordered forfeiture of the usurious interest under N.D.C.C. §§ 47–14–09 and 47–14–10, reduced the principal due for attorney fees by the $3,598.50 incurred for the post-judgment work the court found was not done in a competent manner, and applied a 25 percent penalty to reduce the remaining principal under N.D.C.C. § 47–14–10. As a result, the court awarded Overboe $3,642.75 in his action against Brodshaug.

## II

[¶ 6] Overboe argues the district court abused its discretion in vacating the default judgment. He claims Brodshaug failed to show sufficient grounds under N.D.R.Civ.P. 60(b) to justify vacating the default judgment and she failed to show she had a meritorious defense to the action. He claims that Brodshaug failed to establish extraordinary grounds for relief under N.D.R.Civ.P. 60(b)(vi) and that she was limited to relief under N.D.R.Civ.P. 60(b)(iii).

[¶ 7] Rule 60(b), N.D.R.Civ.P., authorizes a district court to grant relief from a judgment for "fraud ... misrepresentation, or other misconduct of an adverse party," or for "any other reason justifying relief from the operation of the judgment." The decision to grant or deny a motion vacating a default judgment is within the discretion of the district court. *Beaudoin v. South Tex. Blood & Tissue Ctr.*, 2005 ND 120, ¶ 33, 699 N.W.2d 421; *Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶ 13, 637 N.W.2d 681. Absent an abuse of discretion, we will not reverse a district court's decision to vacate a default judgment. *Filler v. Bragg*, 1997 ND 24, ¶ 9, 559 N.W.2d 225. "A [district] court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misinterprets or misapplies the law." *Id.* "A [district] court acts in an arbitrary, unreasonable, or unconscionable manner when its decision is not the product of a rational mental process by which the facts and law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination." *Beaudoin*, at ¶ 33 (quoting *Gepner*, at ¶ 13).

[¶ 8] In *Beaudoin*, 2005 ND 120, ¶ 33, 699 N.W.2d 421 (quoting *Gepner*, 2001 ND 207, ¶ 14, 637 N.W.2d 681), this Court explained the following standards for consideration of motions to vacate a default judgment under N.D.R.Civ.P. 60:

"This Court has emphasized that N.D.R.Civ.P. 60(b) is to be liberally con-

strued and applied, and trial courts should be more lenient in granting motions to vacate default judgments than in vacating judgments in cases which have been tried on their merits. The relevant factors were summarized in *CUNA Mortgage v. Aafedt*, 459 N.W.2d 801, 803 (N.D.1990) (citations omitted):

> This court has long encouraged trial courts to be more lenient when entertaining Rule 60(b) motions to vacate default judgments as distinguished from "litigated" judgments, that is, judgments entered after trial on the merits. While a trial court certainly has discretion to grant or deny a Rule 60(b) motion to vacate a default judgment, the range of that discretion is limited by three important considerations. First, Rule 60(b) is remedial in nature and should be liberally construed and applied. Second, decisions on the merits are preferable to those by default. Third, as a consequence of the first two considerations, where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits.

*Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶¶ 13–14, 637 N.W.2d 681 (internal citations and quotations omitted); *see also Suburban Sales & Serv., Inc. v. District Court of Ramsey County*, 290 N.W.2d 247, 252 (N.D.1980) (noting that no cases were discovered in which our trial courts were held to have abused their discretion in vacating a judgment, but citing several occasions in which our trial courts abused their discretion in refusing to vacate a judgment under Rule 60(b))."

*Beaudoin*, at ¶ 33.

[¶ 9] In *First Nat'l Bank v. Bjorgen*, this Court also described several relevant criteria for district courts to consider in deciding motions for relief from a judgment:

> "[T]he general desirability that a final judgment should not be lightly disturbed; the procedure provided by Rule 60(b) is not a substitute for an appeal; the Rule should be liberally construed for the purpose of doing substantial justice; whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense; whether there are any intervening equities which make it inequitable to grant relief; and any other factor that is relevant to the justice of the judgment under attack."

389 N.W.2d 789, 796 n. 9 (N.D.1986) (quoting *In re Estate of Jensen*, 162 N.W.2d 861, 875 (N.D.1968)).

■ [¶ 10] During the hearing on Brodshaug's motion to vacate, the district court identified two reasons for vacating the default judgment: (1) an answer had been filed before the default judgment was entered and the hearing on the motion for default judgment was not therefore cancelled, as typically is done in those situations; and (2) Overboe did not serve Brodshaug with a notice of entry of a default judgment, explaining the delay between

the default judgment and Brodshaug's motion to vacate. The court said Brodshaug's failure to show up at the hearing on the motion for default judgment was not "the best practices method," but explained the hearing should have been cancelled after the answer was filed. The court's explanation for vacating the default judgment establishes the court's decision was the product of a rational mental process by which the facts and law were stated and considered together for the purpose of achieving a reasoned and reasonable determination. We cannot say the court's decision was arbitrary, capricious, or unreasonable, and we therefore conclude the court did not abuse its discretion in vacating the default judgment.

### III

[¶ 11] Overboe argues the district court erred in failing to dismiss Brodshaug's legal malpractice claim against Overboe under the two-year statute of limitations for malpractice actions in N.D.C.C. § 28–01–18. He claims Brodshaug's legal malpractice claim accrued in June 1998, when he sent Brodshaug a letter informing her "the Court indicate[d he] screwed up" in her post-judgment motion. Overboe argues Brodshaug's claim for legal malpractice in February 2004 was barred by the two-year statute of limitations for legal malpractice claims. Brodshaug responds her malpractice allegations are defensive recoupment and arise out of the same transaction as Overboe's claim for attorney fees.

[¶ 12] The two-year statute of limitations in N.D.C.C. § 28–01–18(3) applies to legal malpractice actions. *Riemers v. Omdahl*, 2004 ND 188, ¶ 6, 687 N.W.2d 445. Here, Overboe's representation of Brodshaug ended in 1998, and she raised issues about the competency of his representation in her February 2004 answer.

Brodshaug's claim would ordinarily be barred by the two-year statute of limitations. In *Minex Res., Inc. v. Morland*, 467 N.W.2d 691 (N.D.1991), however, this Court discussed the application of defensive recoupment in the context of the statute of limitations:

"Recoupment is an equitable doctrine with its own unique characteristics: it must arise out of the same transaction that is the subject matter of the plaintiff's action and it can only be used to reduce or avoid the plaintiff's recovery. It is not a "weapon of offense." Recoupment cannot be used to obtain affirmative relief. Recoupment differs from a counterclaim, which may arise out of a separate transaction and allows for affirmative relief and recovery in excess of that sought by the plaintiff, and from a setoff, which involves a transaction unrelated to the plaintiff's action. Recoupment is purely defensive.

"Counterclaims and setoffs are usually barred by operation of a statute of limitation. On the other hand, it is widely held that a statute of limitation does not defeat defensive recoupment, but that it survives as long as the plaintiff's cause of action exists. We agree with the weight of authority that a claim in the nature of a recoupment defense survives as long as the plaintiff's cause of action exists, even if affirmative legal action upon the subject of recoupment is barred by a statute of limitations."

*Minex*, at 699 (citations omitted).

[¶ 13] Brodshaug's allegations about Overboe's representation were to reduce or to avoid Overboe's attempt to recover attorney fees for his representation of her. We conclude her claim is a defensive recoupment and is not barred by the statute of limitations under the rationale of *Minex*.

## IV

[¶ 14]   Overboe argues the district court abused its discretion in admitting into evidence expert testimony by attorney Mark Fraase in violation of the disclosure requirements of a scheduling order that required disclosure of the substance and factual basis of the expert's testimony. Brodshaug's disclosure of Fraase said the "expert is expected to testify at trial regarding divorce procedures, spousal support, and other related matters." Overboe argues Brodshaug's disclosure did not provide the substance and factual basis of Fraase's opinion as required by the court's order.   At trial, Overboe objected to Fraase's testimony, arguing Overboe had never received the factual bases for the expert's testimony.   The court decided Brodshaug's disclosure complied with N.D.R.Civ.P. 16.

[¶ 15]   Rule 16(d)(4), N.D.R.Civ.P., authorizes a district court to hold a pretrial conference to deal with limitations or restrictions on the use of expert testimony under N.D.R.Ev. 702.   After a pretrial conference, the court must issue an order that controls the subsequent course of the action.   N.D.R.Civ.P. 16(g).   *See Merrill Iron & Steel, Inc. v. Minn–Dak Seeds, Ltd.,* 334 N.W.2d 652, 658 (N.D.1983). We review a court's ruling at trial about compliance with an order issued after a pretrial conference under the abuse of discretion standard.   *Id.*   While we are concerned about Brodshaug's inadequate disclosure, we also note the lack of any effort by Overboe to remedy the deficiency until the brink of trial.   On this record, and considering Overboe's familiarity with the subject matter of the expert's testimony, we cannot say the court's decision allowing Brodshaug's expert to testify was arbitrary, capricious, or unreasonable.   We conclude the court did not abuse its discretion in allowing Brodshaug's expert to testify.

## V

[¶ 16]   Overboe argues the district court's findings of fact are clearly erroneous.   He attacks the following findings:

### II

The parties agreed [Brodshaug] would pay [Overboe] upon completion of [Overboe's] representation of [Brodshaug] for the services [Overboe] rendered on behalf of [Brodshaug].

. . . .

### VII

From October 1996 until August 1998, [Overboe] sent bills to [Brodshaug] sporadically.   The billing statements were not sent each month.   [Brodshaug] did not receive any billing statements during a period from August of 1998 to December of 2006.

. . . .

### IX

It was agreed to by the parties that [Overboe] would extend credit to [Brodshaug] until [Overboe] had completed his representation of [Brodshaug].

. . . .

### XI

The services provided by [Overboe] after the Notice of Entry of Service of Judgment was served did not satisfy the implied term of the oral agreement requiring [Overboe] to work in a reasonably careful and competent manner.

[¶ 17]   In *Edward H. Schwartz Const., Inc. v. Driessen,* we outlined our standard

of review of findings of fact under the clearly erroneous standard:

"A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the trial court made a mistake. A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the trial court. On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses."

2006 ND 15, ¶ 6, 709 N.W.2d 733 (quoting *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144).

[¶ 18] Although Overboe claims Brodshaug's evidence was not believable and was self-serving, evidence in this record supports each of the district court's findings, and we do not reweigh that evidence. We are not left with a definite and firm conviction the court made a mistake, and we therefore conclude the court's findings are not clearly erroneous.

## VI

[¶ 19] Overboe argues the district court erred in deciding the interest he charged on her unpaid balance for attorney fees was usurious.

## A

[¶ 20] Overboe argues the district court erred in concluding N.D.C.C. § 13–01–14 was not applicable. The court decided N.D.C.C. § 13–01–14 was not applicable because Overboe intended to extend credit longer than 30 days and because Overboe failed to comply with the notice requirements of N.D.C.C. § 13–01–15.

[¶ 21] Under N.D.C.C. § 13–01–14(1), a creditor may charge "a late payment charge on all money due on account from thirty days after the obligation of the debtor to pay has been incurred." The late payment charge may not exceed one and three-fourths percent per month and may be charged only if, when the obligation was incurred, the creditor did not intend to extend any credit beyond thirty days and any late payment of the obligation was not anticipated. N.D.C.C. § 13–01–14(2) and (3). "A creditor may not charge the account receivable late payment charge ... unless the creditor promptly supplies the debtor with a statement as of the end of each monthly period, or other regular period agreed upon ... in which there is any unpaid balance." N.D.C.C. § 13–01–15(1). The statement must identify "a. [t]he percentage amount of the late payment charge which will be charged beginning thirty days after the obligation is incurred ...[,] b. [t]he unpaid balance at the end of the period[,] c. [the] identification of any amount debited to the debtor's account during the period[,] d. [any] payments made by ... the debtor ... during the period[, and] e. [t]he amount of the late payment charge." N.D.C.C. § 13–01–15(2)(a–e).

[¶ 22] In *Royal Jewelers, Inc. v. Kopp*, 365 N.W.2d 525, 527 (N.D.1985), a debtor on the balance of an open account for personal jewelry argued N.D.C.C. § 13–01–14 was not applicable to service charges to the account "because it was apparent that credit would be extended beyond thirty days and that late payment was anticipated." This Court said, "unless [N.D.C.C. § ]13–01–14 applie[d], there [was] no legal or contractual basis for a 1.5% per month finance charge, and [the creditor] would be limited to the presumed

rate of interest of 6% per annum under N.D.C.C. § 47–14–05." *Royal Jewelers*, at 527. This Court said the district court made no findings about whether the creditor intended to extend credit to the debtor beyond thirty days or whether late payment was anticipated under N.D.C.C. § 13–01–14. *Royal Jewelers*, at 527. This Court said no usury claim was made, and reversed and remanded the award of service charges for findings on the predicate facts for the applicability of N.D.C.C. § 13–01–14. *Royal Jewelers*, at 527. This Court said if N.D.C.C. § 13–01–14 was not applicable, the creditor was "only entitled to judgment for the presumed rate of interest of 6% per annum on its account balances" under N.D.C.C. § 47–14–05. *Royal Jewelers*, at 527.

[¶ 23] Although Overboe claims the district court clearly erred in finding the underlying factual predicates for the application of N.D.C.C. §§ 13–01–14 and 13–01–15, we have concluded those factual determinations are not clearly erroneous. Under those factual findings, the court did not err in deciding those statutes were not applicable to Overboe's charges.

### B

[¶ 24] Overboe nevertheless argues the district court erred in applying the usury statutes in N.D.C.C. §§ 47–14–09 and 47–14–10. He claims Brodshaug cannot claim usury because she did not actually pay a usurious interest rate.

[¶ 25] Our analysis of Overboe's argument requires consideration of the interrelationship and application of N.D.C.C. § 47–14–05 and our usury statutes, N.D.C.C. §§ 47–14–09 and 47–14–10, to the district court's findings. Section 47–14–05, N.D.C.C., provides:

"Interest for any legal indebtedness must be at the rate of six percent per annum unless a different rate not to exceed the rate specified in section 47–14–09 is contracted for in writing. All contracts must bear the same rate of interest after maturity as they bear before maturity, and any contract attempting to make the rate of interest higher after maturity is void as to the increase of interest, except for a charge for late payment penalty charged in addition to interest which may not exceed fifteen dollars or fifteen percent of the late payment, whichever is less, unless otherwise agreed to in any commercial, agricultural, or real estate note or mortgage."

Section 47–14–09(1), N.D.C.C., provides:

"Except as otherwise provided by the laws of this state, a person, either directly or indirectly, may not take or receive, or agree to take or receive, in money, goods, or things in action, or in any other way, any greater sum or greater value for the loan or forbearance of money, goods, or things in action than five and one-half percent per annum higher than the current cost of money as reflected by the average rate of interest payable on United States treasury bills maturing in six months in effect for North Dakota for the six months immediately preceding the month in which the transaction occurs, as computed and declared on the last day of each month by the state banking commissioner, but that in any event the maximum allowable interest rate ceiling may not be less than seven percent, and in the computation of interest the same may not be compounded; provided, however, that a minimum interest charge of fifteen dollars may be made. A contract may not provide for the payment of interest on interest overdue, but this section does not apply to a contract to pay interest at a lawful rate on interest that is overdue at the time

such contract is made. Any violation of this section is deemed usury."

Section 47–14–10, N.D.C.C., provides:

"The taking, receiving, reserving, or charging of a rate of interest greater than is allowed by the laws of this state relative to usury shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it or which has been agreed to be paid thereon, and in addition thereto, a forfeiture of twenty-five percent of the principal thereof. In case the greater rate of interest has been paid, the person by whom it has been paid, or that person's legal representative may:

1. Recover back twice the amount of interest thus paid, together with twenty-five percent of the principal from the person taking or receiving the same, but an action must be commenced for such purpose within four years after the time when the usurious transaction occurred; or

2. Offset twice the amount of such interest against any indebtedness which the person who paid the same owes to the party or parties receiving such usurious interest."

[¶ 26] In *T.F. James Co. v. Vakoch*, 2000 ND 9, ¶¶ 1–2, 604 N.W.2d 459, this Court considered a usury claim in the context of a landlord and tenant relationship. This Court concluded the lease was not subject to the usury statutes and reversed and remanded for application of N.D.C.C. § 47–14–05. *T.F. James*, at ¶¶ 1, 7, 13. This Court explained:

"This Court interpreted and analyzed the relationship between sections 47–14–09 and 47–14–05, N.D.C.C., in *Oil Inv., Inc. v. Dallea Petroleum Corp.*, 152 N.W.2d 415, 418 (N.D.1967). Dallea Petroleum defaulted on a promissory note. The holder of the note, Oil Investment, sued and recovered principal and interest due on the note. The note contained a clause making the rate of interest after maturity higher than the rate before maturity. On appeal, Dallea Petroleum contended the note was usurious and the lower court should have applied the penalty for usury. This Court held the note was not usurious. In interpreting these statutes, we said "interest before maturity is compensation for the use of money and is regulated by Section 47–14–09, N.D.C.C., and that interest allowed after maturity is considered compensation for damages for the wrongful detention of money and is regulated by Section 47–14–05, N.D.C.C." *Id.* at 418. The Court concluded "any provision in any contract providing for a higher rate after maturity than before maturity, regardless of the rate, is void as to such increase and will have no other effect on the contract." *Id.* at 420.

"Although sections 47–14–05 and 47–14–09 have been amended since *Dallea*, their core language has not changed. It is apparent the interest charged here was not before maturity, nor was it compensation for the use of money. It was compensation for damages for the wrongful detention of money. As such, section 47–14–05, N.D.C.C., applies to the transaction, not N.D.C.C. § 47–14–09.

"Under section 47–14–05, N.D.C.C., post-maturity interest rates and late fees are limited. *Royal Jewelers, Inc. v. Kopp*, 365 N.W.2d 525, 527 (N.D.1985) (holding Royal Jewelers was entitled only to interest allowed under 47–14–05 where customer was charged "service charges" for the balance on an open account). Unlike section 47–14–09, however, a violation of 47–14–05 does not constitute usury. *See Dallea*, 152 N.W.2d at 418–20 (finding N.D.C.C.

§ 47–14–05 applies to the note, but the note is not usurious)."

*T.F. James*, at ¶¶ 6–8 (footnotes omitted).

[¶ 27] Here, the core language of N.D.C.C. §§ 47–14–05 and 47–14–09 has not changed since *T.F. James* and *Dallea*. As applied to this case, however, the district court found that Overboe and Brodshaug agreed Brodshaug would pay Overboe upon completion of his representation of her, that Overboe continued working for Brodshaug until June 1998, and that from February 1997 to August 1998, Overboe charged Brodshaug a monthly service charge of 1.5 percent per month on all unpaid balances, including past service charges and charges less than 30 days old. There is evidence in this record supporting the court's findings, and they are not clearly erroneous.

[¶ 28] The court's findings reflect Overboe was charging Brodshaug "service charges" on her bill before the bill was due in June 1998, when Overboe quit representing Brodshaug, which constitutes compensation for the use of money, not compensation for damages for the wrongful detention of money, and triggers application of the usury statutes under *T.F. James*, 2000 ND 9, ¶¶ 6–8, 604 N.W.2d 459 and *Dallea*, 152 N.W.2d at 418. Under the court's findings, Overboe charged Brodshaug an interest rate higher than that permitted by N.D.C.C. § 47–14–09 before he completed his representation of her in June 1998, which was the date the court found the parties had agreed Brodshaug would pay Overboe for his services.

[¶ 29] Overboe relies on *Lindberg v. Burton*, 41 N.D. 587, 171 N.W. 616 (1918), to support his argument the usury statutes are not applicable because Brodshaug did not actually pay him any interest. In *Lindberg*, this Court recognized the predecessor to N.D.C.C. § 47–14–10 applied to two different situations:

"It is first provided that where usurious interest has been knowingly contracted for, but not paid, the entire interest on the note or other evidence of indebtedness is forfeited. It is next provided that where such usurious interest has been paid the person by whom it has been paid, or his legal representative, may recover back, from the person who has taken or received it, twice the amount of the interest paid, in an action commenced within two years from the time the usurious transaction occurred. The purpose and effect of statutory provisions similar to section 6076, supra, have been considered by many of the courts of this country, including the Supreme Court of the United States. And the authorities are generally agreed that the statute provides for two different contingencies, or two distinct classes of usury cases, and prescribes a different penalty as to each class. They further agree that in cases falling within the first provision—i.e., where usurious interest has been knowingly contracted for, but not paid-all interest on the usurious obligation is ipso facto forfeited, the debtor can defend against any claim for interest, and the creditor can recover only the sum lent without any interest whatever. But in cases falling within the second provision—i.e., where the debtor has in fact paid interest upon the usurious contract—he cannot plead such payment either as a credit on, or as an offset or counterclaim to, the principal; but his only remedy is to maintain the action to recover the penalty provided for in the second part of section 6076, supra. In other words, the courts uniformly hold that the remedy afforded by the statute is exclusive, and that a party who desires to claim the right granted by the statute must avail himself of the remedy therein prescribed, and can re-

sort to no other form or mode of procedure."

41 N.D. at 592–93, 171 N.W. at 618 (citations omitted). In *Lindberg,* the debtors' action was maintained under the second prong of the statute, authorizing a person who had paid usurious interest to recover twice the amount of the interest alleged to have been paid. Here, Brodshaug did not pay the interest and her claim is predicated upon the first prong of the statute. Overboe's reliance on *Lindberg* is misplaced.

[¶ 30] Although Brodshaug did not make any usurious payments to Overboe, charging a rate greater than allowed by the usury statutes triggers the usury sanctions under the first prong of N.D.C.C. § 47–14–10. Based on the district court's findings in this case, we conclude the court did not err in applying the usury statutes to Overboe's claims.

VII

[¶ 31]  We affirm the order vacating the default judgment and the subsequent judgment.

[¶ 32] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.